Ryan West (Utah Bar #10398)
**CORVUS LAW GROUP, LLC**
15 West South Temple, Floor, Suite 1000
Salt Lake City, Utah 84101

888-315-4735 (tel)

888-316-0929 (fax)
*Attorney for Defendant/ Counterclaimant*

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

---

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRSUTEE FOR HARBOR VIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2007-5, | **ANSWER AND COUNTERCLAIM (JURY DEMAND)** |
| Plaintiff, | |
| vs. | |
| JEFFREY JOHNSON, | Civil No. 2:10-cv-00748 |
| Defendant, | Judge Ted Stewart |
| JEFFREY JOHNSON, | |
| Counterclaimant, | |
| vs. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY; AMERICAN BANKERS CONDUIT; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; | |
| Counterclaim Defendants. | |

Defendant, Jeffrey Johnson ("Defendant"), by and through counsel, Ryan West, answers Plaintiff's Complaint as follows:

1.      Answering Paragraph 1 of Plaintiff's Complaint, Defendant admits the allegations contained therein.

2.      Answering Paragraph 2 of Plaintiff's Complaint, Defendant lacks sufficient knowledge to form a belief as to the truth of such allegations, and therefore, generally and specifically denies each and every such allegation.

3.      Answering Paragraphs 3 through 10 of Plaintiff's Complaint, Defendant admits the allegations contained therein.

4.      Answering Paragraph 11 of the Plaintiff's Complaint, Defendant generally and specifically denies the allegations contained therein.

5.      Answering Paragraphs 12 and 13 of Plaintiff's Complaint, Defendant contends the documents referenced therein speak for themselves.

6.      Answering Paragraph 14 of the Plaintiff's Complaint, Defendant admits he sent a rescission notice to the lender but generally and specifically denies that he failed to indicate why rescission was warranted.

7.      Answering Paragraphs 15 and 16 of the Plaintiff's Complaint, Defendant admits the allegations contained therein.

8.      Answering Paragraph 17 of the Plaintiff's Complaint, Defendant repeats and re-alleges his responses in Paragraphs 1 through 7 of this Answer, and incorporates the same by reference as if fully set forth herein.

9.      Answering Paragraph 18 of the Plaintiff's Complaint, Defendant admits the allegations contained therein.

10.     Answering Paragraphs 19 and 20 of the Plaintiff's Complaint, Defendant generally and specifically denies the allegations contained therein.

## SEPARATE DEFENSES

### FIRST DEFENSE

The Complaint, and each and every purported cause of action contained therein, fails to state facts sufficient to constitute a cause of action as against Defendant.

### SECOND DEFENSE

Defendant alleges that Plaintiff and/or Plaintiff's agents and/or predecessors in interest excused Defendants for the acts, omissions and conduct and from any liability alleged in the Complaint and in each and every alleged cause of action contained therein.

### THIRD DEFENSE

The Complaint, and each and every purported cause of action therein, is barred because, by its conduct or otherwise, Plaintiff has waived and/or released any and all such claims.

### FOURTH DEFENSE

Any recovery by Plaintiff is barred because Plaintiff had an opportunity to mitigate its damages and failed to do so.

### FIFTH DEFENSE

Any recovery by Plaintiff is barred, in whole or in part, by reason of the fact that the obligations of Defendant, if any, have been fully satisfied.

### SIXTH DEFENSE

Any injury, damage, or loss allegedly sustained by Plaintiff was proximately caused by or contributed to by Plaintiff's own carelessness and negligence.

### SEVENTH DEFENSE

Plaintiff has acted inequitably and with unclean hands and is thereby estopped from bringing any cause of action against Defendant.

## EIGHTH DEFENSE

Plaintiff is barred, either in whole or in part, from asserting any cause of action or obtaining any recovery from Defendant, because any damages or injuries allegedly suffered by Plaintiff was caused or contributed to, either wholly or partially, by the negligence, lack of due diligence and/or other fault of Plaintiff and/or others and not by any act, omission or breach of duty on the part of Defendant.

## NINTH DEFENSE

The Complaint, and each purported cause of action alleged therein, is barred because Plaintiff failed to join necessary and indispensable parties to this action.

## TENTH DEFENSE

Plaintiff is barred from asserting any cause of action against or obtaining any recovery from Defendant because any damages or injuries allegedly suffered by Plaintiff were proximately caused by Plaintiff's voluntary assumption of any and all known risks.

## ELEVENTH DEFENSE

Plaintiff is barred from asserting any cause of action or obtaining any recovery from Defendant because Plaintiff failed to fulfill the conditions precedent set forth in the written agreement between the parties.

## TWELFTH DEFENSE

Plaintiff's purported causes of action, and each of them, are barred by Plaintiff's fraudulent conduct.

WHEREFORE, Defendant respectfully requests that the Complaint be dismissed with prejudice and upon the merits, that Plaintiff take nothing thereby, that Defendant be awarded his attorney's fees and costs incurred in defendant this action, and for such other and further relief as the Court may deem necessary, just, and proper under the circumstances.

## COUNTERCLAIM

Defendant Jeffrey Johnson, by and through his counsel, hereby counterclaims against Plaintiff Deutsche Bank National Trust Company, As Trustee For Harbor View Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-5 ("Deutsche") and others as follows:

### PARTIES, JURISDICTION, VENUE

1.   Counterclaimant Jeffrey Johnson is a Utah citizen and resident of Summit County, Utah.

2.   Deutsche Bank National Trust Company is a Delaware corporation and at all times relevant herein was doing business in the State of Utah.

3.   Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation whose address is P.O. Box 2026, Flint, Michigan 48501-2026.  MERS purports to be the original beneficiary of the Trust Deed.

4.   Defendant American Brokers Conduit is a Delaware corporation and at all relevant times herein was doing business in the State of Utah.

5.   The unnamed defendants are persons who may have or assert an interest in the subject property as investors in the debt purportedly secured thereby.

6.   The court has jurisdiction of this action pursuant to §78B-6-401 et seq. (declaratory judgment) and §78B-6-1301 et seq. (quiet title), Utah Code Ann. 1953.

7.   The situs of the property the subject of this action is Summit County, Utah.  Venue is proper in this Court.

## SECURITIZATION CASES

8. This is an action respecting a "securitized" loan - one in which the debt is pooled with similar debts and sold as "mortgage backed securities" ("MBS"). The debt is evidenced by a Note, and secured by a Trust Deed. The general process of securitization is described below.

9. Securitization reflects a process, not generally recorded or readily apparent, having a significantly different form and purpose from the traditional mortgage loan. What begins as, and may give the appearance of, an ordinary mortgage loan, is, in fact, an investment scheme. Application of well-established principles of law to such a scheme fundamentally alters the rights of the parties in the subject realty. This results from the fact that persons asserting the status and rights of lenders actually make no loans, or loan only temporarily. They promptly transfer their rights to undisclosed persons, who participate with the intent of recovering from a collateral source when anticipated default occurs. Securitization schemes always involve providing investors rights to recoup profitably from a collateral source. The scheme is completed by rewarding the purported lenders with opportunity to foreclose debts they do not own, and retain the proceeds as fees for providing the investors opportunity to recoup profitably from a collateral source.

10. This action raises the issues whether, in the enforcement of established legal principles, purported lenders can obtain from such investors a right to collect debts owned by the investors, and whether such investors may retain an interest in the subject realty if they do not assert it, but choose instead recoupment from the collateral source.

11. The purpose of the action is to determine who is entitled to the subject realty. This does not determine validity of the debt.

12. In all securitization cases, there are three potential claimants to the subject realty:

1.  the borrower-purchaser of the realty;

2.  the purported lender (its successors and agents), who actually made no loan, and has sold its interest in the mortgage/trust deed;

3.  the investors in securities backed by the mortgage/trust deed, who actually funded any loan, and have any right to collect the debt.

13.   Plaintiff here is the borrower/purchaser.   Defendants are the purported lender, its successors and assigns.   The investors, whose identities have been withheld, may be named as John Does.

14.   It can be determined preliminarily that the purported lender is not entitled to the realty.   Commonly, it parted with no money, and is entitled to collect none.   The loan was funded in almost all cases, by a warehouse lender, which received the funds from, or was reimbursed them by, investors in the MBS.   When the lender transferred the loan to a securitization pool, it transferred, and lost any interest in the mortgage or trust deed.  §57-1-35, UCA (1953).

15.   Lacking such an interest, the lender cannot foreclose in its own right.   Only the owners of the debt, the investors in MBS, may be able to do so.   This is unaffected by the fact that the lender, under a Pooling and Securitization Agreement, may have possession of the Note as a "custodian" for the investors in MBS.   Such possession is not the possession required to be a holder in due course authorized to enforce the Note.

16.   The first stage of the present litigation is a declaratory judgment action to determine, and terminate, through a quiet title action, any claims of the purported lender to the realty.   The position of the purported lender in these matters is essentially fraudulent.   It is an attempt to obtain realty on which it has loaned nothing, in purported collection of a debt it is not owed.   It is literally an attempt to obtain free realty.

17.   The second stage of the litigation follows a declaratory judgment with a classic quiet title action to determine right to the realty as between the borrower/purchaser and the investors in MBS.  Because of the jurisdictional difficulties in joining John Does in a federal diversity action, the second stage may need to be filed in State Court.

18.   While local law (§70A-9a-601(1), (2), UCA (1953)) permits such investors to record their interests, ordinarily, they do not.   This means that their identity is unknown to the borrower/purchaser.  Further, while the borrower/purchaser in this case, having a right to do so, demanded the identities of such investors, no information has been provided.   In quiet title, however, potential claimants may be served by publication, in order to obtain a binding decree. See §78B-6-1300 et seq., UCA (1953).

19.   Absent a quiet title action, title to the realty may remain clouded and unmarketable indefinitely.  A quiet title action requires the investors to come forward now, upon peril of losing any claim which may not have been previously discharged.

20.   Absent a positive finding that the debt has been discharged, by, for example, default insurance in some form, a quiet title decree will not affect validity of the debt, only of the security.

**THE LENDER CANNOT BE A HOLDER IN DUE COURSE OF THE NOTE**

21.   In the ordinary course of securitization, Notes evidencing the pooled debts are gathered and lodged in a repository, in the possession of a "custodian" who acts for the investors, and has no right or interest of his own.   At the same time, the lender gives purchasers of MBS "certificates" certifying their ownership of the "loans" and their right to obtain the payments due under the Notes.  Frequently, the "custodian" appointed by the securitizers is the original lender.

22.  Since investors in MBS do not sign the Pooling and Servicing Agreement, under the typical Statute of Frauds, (see §25-5-1, UCA (1953), such agreements do not bind the interest of the investors in the mortgage/trust deed.  Further, the "custodian" appointed by the securitizers cannot be a "holder in due course" of the Notes.  This means that the custodian has no authority to foreclose.

23.  A Note is a negotiable instrument under the Commercial Code.  The Code defines who is, or is not, a "holder" of a Note, and who is, or is not, entitled to enforce it.

24.  §70A-3-201, UCA (1953), defines "negotiation" of an instrument as a "transfer of possession."  §70A-3-203 defines "transfer" as "for the purpose of giving the person receiving delivery the right to enforce the instrument."

25.  Under §70A-3-301, a "person entitled to enforce" an instrument includes a non-holder in possession who has the rights of a holder, or the person who is entitled to possession. A "custodian" is not, and does not have the rights of, a holder; the person entitled to possession is the person on whose behalf the custodian has possession, the investors in MBS.

26.  A "holder in due course" is defined by §70A-3-302.  Under §70A-3-302(1)(a), (b), a holder in due course must be one to whom the instrument is "negotiated," and who takes it for value and in good faith.  Notes are not "negotiated" - transferred with intent to confer the power to enforce - to custodians, who do not take for value, and who, in good faith, have the instrument only for safe keeping.  "Value" and "Consideration" are defined in §70A-3-203.

27.  Under §70A-3-306, a non-holder is subject at any time to rescission of delivery, and re-possession by the owner.

28.  To demonstrate a right to foreclose, it is not sufficient for the lender merely to have possession of the Note.  If the loan has been securitized, the possessor of the Note is

presumptively a custodian.  If the lender has possession of the Note merely as a custodian for investors, the lender may not foreclose without demonstrating an express agency to do so on behalf of the investors.

29.  A Pooling and Servicing Agreement unsigned by investors in MBS is not an express agency because it does not satisfy the Statute of Frauds.

## A POOL TRUST IS NOT AN AGENT FOR INVESTORS

30.   Typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee.  Loans are sold to the trust, and the debts accumulated in a trust "pool."  This appears to follow the classic pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary.  However, transfer to the trust is intended as a true sale for tax purposes, not a transfer in trust, and there is no beneficiary.  The "trust" is simply a vehicle for "pooling" of the debts, and sale of the assets to others, the investors in the MBS.  The investors give value, and receive "certificates," which certify their ownership of the debt.  Such certificates may be regarded as replacement of the Notes.  This is not a beneficial interest: it is expressly ownership.  The trust is emptied of assets, and the trustee thereafter typically performs no functions.  The securitizers appoint "servicers" for the loans, but such appointment does not bind the investors.

31.  Pooling and Servicing Agreements are entered into by the securitizers, not including the investors in MBS.  Certificates are executed by the "trustee" and the original lenders.

32.  Transfer of the beneficial interest in a trust deed by operation of law under §57-1-35, UCA (1953) confers upon the investors in MBS authority to declare a default and authorize foreclosure.  These are not powers which a trustee named in a trust deed can exercise without authorization of the beneficiary.  Nor, if challenged, can such authorization be presumed.  While

it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, or has obtained instruction from them.  Thus, "servicers" are not a "real party in interest" unless they can show their agency to act for the investors.

33.   This action, therefore, requires a declaration that the purported lender, its successors and assigns, have no right to foreclose on their own behalf, requires them to demonstrate any right they claim to foreclose as agents of the investors in MBS, and, failing such demonstration, requires investors to come forward to assert their interest, or to have the title quieted against them, leaving only a personal obligation.

## BACKGROUND FACTS

34.   Counterclaimant purchased for value and is the owner of the property located at 5955 Mountain Ranch Drive, Park City, Utah 84098 in Summit County (hereinafter "the subject property").

35.   On or about May 21, 2007, Counterclaimant executed a Promissory Note (hereinafter "the Note") in favor of American Brokers Conduit (hereinafter "American Brokers Conduit"). On information and belief, the original of said Note was then retained by defendant American Brokers Conduit.

36.   On or about May 21, 2007, Counterclaimant made and delivered the Deed of Trust (hereinafter "the Trust Deed") conveying the subject property in trust for the purposes recited therein. Said Trust Deed was recorded on May 21, 2007 and found at entry no. 00814361 in the Summit County Recorder's Office.

37.    Said Trust Deed names as beneficiary thereof defendant MERS acting solely as nominee for Lender and Lender's successors and assigns, and the successors and assigns of MERS.

38.    MERS is a private corporation that administers the MERS system, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS system, MERS purports to become the mortgagee of record for participating members through assignment of the members interests to MERS.  MERS is listed as the grantee in the official records maintained at county recorders offices.  The lenders initially retain the promissory notes as well as the servicing rights to the mortgages.  The lenders can then sell these interests to investors.

39.    The first position Trust Deed recites that the Beneficiary of this security instrument is defendant MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS and

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to, releasing and canceling this Deed of Trust.

40.    A Servicer was designated to act as the representative/agent for the purported owners of the debt evidenced by the subject Note and the corresponding Trust Deed.

41.    American Brokers Conduit was provided a line of credit by undisclosed warehouse lenders, pending pooling of the Note with other such instruments, and sale of the pooled instruments as securities to unknown investors.

13

42.     American Brokers Conduit has been reimbursed all sums advanced by them in connection with the Note.

43.     American Brokers Conduit's function was limited to obtaining the Note, in exchange for a fee, as a preliminary step to "securitization" of the debt as described herein.

44.     The debt was pooled with similar debts pursuant to a Pooling and Servicing Agreement between Lender and Deutsche, in which Deutsche purported to act as Trustee of a Trust created thereby, for the purpose of selling such debts as securities to investors, and appointing a "Servicer" of the pooled debts, and a "Custodian" of the Notes evidencing such debts, for the benefit of such investors.

45.     Such investors and/or the person or persons unknown who sold such securities have obtained insurance against default on the underlying obligations in the form of a "credit default swaps" or other credit enhancements.

46.     The cost of such credit default swap or other credit enhancement was, as applicable to the subject loan, charged to borrower.

47.     Notwithstanding the transfer of the debt as herein described, no transferee thereof has recorded a copy of any security agreement providing any security interest in the Trust Deed or any appropriate affidavits, pursuant to §70A-9a-607(2), Utah Code Ann. 1953, in order to perfect any right of enforcement under §70A-9a-607(i), Utah Code Ann. 1953.

48.     As a result of the transfer of the debt as part of a securities transaction, and of the lack of such recordings, defendants are not the present owners of the debt or the obligees thereon.   Counterclaimant, and, based on the information received to date, Counterclaim Defendants, do not know who is or are the present owners of the debt, or the obligee(s) thereon.

49.     Named Counterclaim Defendants, or one of them, is a mere custodian of the Note for others.

50.     The Trust Deed has not been assigned or transferred of record, in whole or in part.

51.     Counterclaimant, having a right under the Note and federal law to do so, demanded of the Servicer, who purports to have a relationship in the nature of agency with persons to whom the debt and/or Trust Deed may be assigned, and/or persons in fiduciary relationships to such assignees, all information and records showing transfer of such debt to any person or persons, for the purposes, among others, of determining the proper persons to receive payments under the Note, or to negotiate payment or reinstatement of the obligation, or to obtain acknowledgment of proper application of payments.

52.     Through the conduct described in this Counterclaim, Counterclaim Defendants have attempted to collect on a debt to which they are not legally entitled to as they have no knowledge of proper payments and credits to the debt, and they are not the proper parties entitled to enforce the Note.

53.     The obligations of the Counterclaimant are not owed to the Counterclaim Defendants who are claiming interest.  There is no perfected interest as to the true Note Holder.

54.     Neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the Counterclaimant or who was a lawful beneficiary under the trust deed ever declared a default of the note executed by Counterclaim Defendants and Counterclaimant and no true beneficiary with a beneficial interest under the trust deed ever declared a default under the Note and trust deed and no proper beneficiary under the trust deed ever declared a default under the Note and trust deed and no proper beneficiary under the trust

ever directed or will ever direct a sale of the property owned by Counterclaimant in which MERS is named as beneficiary or nominee of the beneficiary/lender at issue in their action.

### FIRST CAUSE OF ACTION-ESTOPPEL/DECLARATORY JUDGMENT

55.     Counterclaimants re-allege and incorporate herein by reference paragraphs 1-54 hereinabove.

56.     The Servicers of the Note in the Trust Deed purport to have a relationship in the nature of agency with persons to whom the debt and/or Trust Deed may be assigned, and/or persons in fiduciary relationships to such assignees.

57.     By permitting the Servicers to so represent its capacity, the defendants and any assignees have conferred upon the Servicers the right and obligation to disclose and assert the interests of such assignees as necessary to protect such interests.

58.     The refusal of the Servicers, upon demand, to disclose such interests is binding upon their assignees.

59.     The result of such behavior by the Servicers, defendants, and such assignees, is to subject borrowers and their successors in title, including plaintiff, to risks, abuses, and prejudice, and to render impossible proper discharge of the debt.

60.     As a result of such behavior, defendants, and such assignees, are estopped to assert any present default on the debt, or power of sale under the Trust Deed.

61.     An actual controversy exists between plaintiff and defendants regarding the amenability of the subject property to sale by defendants, which may be resolved by the Court pursuant to 28 USC §2201, and Rule 57, U.R.C.P.

62.     The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

### SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

63.     Counterclaimant re-alleges and incorporates herein by reference paragraphs 1-62 hereinabove.

64.     The defendants are not a Trustee of any existing Trust, and Counterclaim Defendants, the Servicers and defendant Beneficiaries:

    a.  do not know whether a default had occurred, or had been declared by the actual owners of the debt who have become the actual beneficiaries under the Trust Deed;

    b.  lacked authority to declare a default or otherwise pursue collection of the debt;

    c.  lack authority to sell the subject property or to distribute any proceeds thereof;

    d.  are not entitled to any of such proceeds on their own account;

    e.  cannot give a trustee's deed which is free and clear of the debt;

    f.  cannot give an enforceable release of the Trust Deed.

65.     In the event that any investor in the debt, or any assignee of an interest thereto, did not obtain assignment of the Trust Deed, the debt has, to that extent, become unsecured, and the Note and Trust Deed, may not be foreclosed.

66.     Counterclaimant, at any time relevant hereto, by diligent search or otherwise, could not have discovered, without the assistance of the Servicer and, consequently, the Counterclaim Defendants, the identities of any assignee of any interest in the debt or Trust Deed,

or the present owners of the debt, or the interest of any such person as the result of any such assignment.

67.     An actual controversy exists between Counterclaimant and Counterclaim Defendants regarding the amenability of the subject property to sale by defendants, which may be resolved by the Court pursuant to 28 USC §2201, and Rule 57, U.R.C.P.

68.     The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

### THIRD CAUSE OF ACTION: QUIET TITLE

69.     Counterclaimant re-alleges and incorporates herein by reference paragraphs 1-68 hereinabove.

70.     The transfer of the debt as part of a security subjects Counterclaimant to potential multiple and unpredictable recoveries, or attempts to recover, against the subject property.

71.     The failure of Counterclaim Defendants to retain any interest in the debt voided any title or power they might have under the Trust Deed, and rendered said Trust Deed unenforceable by them.

72.     The inability of Counterclaimant to safely discharge any lien of the Trust Deed against the subject property in favor of assignees of interest in the debt and Trust Deed, and the threat of multiple recoveries or attempts to recover against the subject property, constitute a cloud on Counterclaimant's title which can only be removed by requiring all such assignees to appear and assert their interests and the extent to which any obligation owing to them has not been discharged by payment, including collections on insurance against default, or, failing such

assertion of claims, entry of a decree of quiet title freeing the subject property from the lien of such obligation.

73.     The Court, pursuant to §78B-6-1301 et seq., Utah Code Ann (1953) (Supp. 2008), should enter its Order herein forthwith quieting title to the subject property in plaintiff and against defendants freeing title to the subject property of the lien of the Trust Deed and leaving any debt unsecured by any interest in the subject property.

## FOURTH CAUSE OF ACTION:  ACCOUNTING

74.     Counterclaimant re-alleges and incorporates herein by reference paragraphs 1-73 hereinabove.

75.     Counterclaimant seeks a full accounting for the transfers of his promissory note and the securitization of his promissory note.

## FIFTH CAUSE OF ACTION: REFUND, FEES AND COSTS

76.     Counterclaimant re-alleges and incorporates herein by reference paragraphs 1-75 hereinabove.

77.     The Trust Deed has been unenforceable by defendants from the first transfer of the debt as set out hereinabove.

78.     Counterclaim Defendant Servicer and Trustee's pretense of authority to foreclose, or attempt to foreclose, under the Trust Deed was fraudulent.

79.     Counterclaim Defendant Servicer's assertions to the Court herein that they hold and are entitled to enforce the debt would constitute a fraud upon the Court, subjecting defendants to sanctions and imposition of fees and costs under §78B-5-825, U.C.A. (1953).

80.     The Court should enter its Order herein forthwith to Counterclaim Defendants, jointly and severally, to pay to Counterclaimant his fees and costs, together with a reasonable

attorney's fee, to be shown by affidavit, and to reimburse to Counterclaimant his fees and charges under the debt and Trust Deed.

**WHEREFORE**, Counterclaimant prays that the Court enter its Order herein:

1.      Enjoining further dispositions of the subject realty pending resolution hereof.

2.      Declaring that Counterclaim Defendants and Trustee lack any interest in the subject property which might permit them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the subject property;

3.      Terminating all present collection activities upon any security in the subject property and enjoining any further such collection actions not originated by the owners of the debt.

4.      Declaring that the Trust Deed is not a lien against the subject property, ordering the immediate release of the Trust Deed of record, and quieting title to the subject property in plaintiff and against defendants and all claiming by, through, or under them;

5.      Refunding to Counterclaimant from Counterclaim Defendants, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Counterclaimant his cost of the action, including a reasonable attorney's fee; and

6.      For such other and further relief as the Court deems just in the premises.

RESPECTFULLY submitted on September 23, 2010.


                                                  /s/ Ryan West                           
                                                 Ryan West
                                                 **Attorney for Jeffrey Johnson**